**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 17, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-30780
_____

MICHAEL E. MICHALIK, JR., Individually and on behalf of the
minor child, Hannah E. Michalik; DEBORAH P. MICHALIK, his wife,

Plaintiffs - Appellees,

versus

MIKE HERMANN, Deputy Sheriff; ET AL.,

Defendants,

KEVIN GUILLOT; PAUL TOYE; MIKE HERMANN, Deputy Sheriff;
HARRELL CLARK; SHENNANDOAH JONES; ERIC LEVIS,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____

Before REAVLEY, JOLLY, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This § 1983 and <u>Bivens</u> Fourth Amendment related case has its
origins in the search of the home of Michael and Deborah Michalik
("the Michaliks").  The search was conducted under a warrant issued
as part of an investigation into a New Orleans drug operation,
involving several local, state, and federal officers.  The search
failed to uncover any evidence of illegal activity, and the
Michaliks brought suit against those involved in the procurement
and execution of the warrant.  The Michaliks contend that the

officers relied on stale information to claim that Mr. Michalik's step-brother stashed drugs at their home.

In the over five years since the complaint was filed, the case has provided an ever-shifting web of claims and defendants. At issue in these consolidated appeals is the district court's denial of qualified immunity to six defendants-appellants on various claims relating to the procurement of the search warrant, the search of the home, and/or the forcible entry of the home. See Michalik v. Hermann, 2003 WL 21805037 (E.D. La. Aug. 4, 2003).

We hold that Levis and Toye are entitled to qualified immunity for claims based on the procurement of the warrant because neither prepared, presented, nor signed the application for the search warrant. Accordingly, we REVERSE the district court's denial of qualified immunity as to (1) Levis and Toye on claims relating to the procurement of the warrant and (2) Toye on claims relating to the search of the home. However, we hold that material issues of fact exist as to the conduct of Guillot, Hermann, Clark and Jones in the forcible entry of the home. Accordingly, we DISMISS this interlocutory appeal as to those claims for want of jurisdiction.

I

A

In early 1998, Officer Paul Toye ("Toye") of the New Orleans Police Department and Agent Eric Levis ("Levis") of the federal

2

Drug Enforcement Agency ("DEA")[1] began separate investigations of a drug ring in New Orleans, Louisiana. Toye and Levis combined their efforts, and the investigation broadened to include police authorities in Jefferson, St. Bernard, and St. Tammany Parishes.

In August 1998, the New Orleans Police Department requested wiretaps through the Louisiana State Police. Trooper John Fitzpatrick ("Fitzpatrick") became the case agent for the Louisiana State Police. The wiretaps were concluded in early November 1998. Search warrants were then issued for seventeen houses, and arrest warrants were issued for thirty-three individuals. Fitzpatrick was the sole affiant on the Application for Search Warrant for 406 E. St. Jean Baptiste in Chalmette, Louisiana, the Michaliks' home. An arrest warrant was also issued for Mr. Michalik's step-brother, Gene J. Taglialavore ("Taglialavore"). Taglialavore had resided at 406 E. St. Jean Baptiste from 1989 to 1991, but his permanent address was in Nevada at the time the warrant was issued.

The search warrant was executed by eight to ten officers of various jurisdictions on November 18 at approximately 5:30 a.m. Only four of the executing officers have been explicitly identified by name: Kevin Guillot ("Guillot") of the New Orleans Police Department; and Mike Hermann, Harrell Clark, and Shennandoah Jones, all of the St. Bernard Parish Sheriff's Department (collectively, the "St. Bernard defendants"). The Michaliks were detained for

_____

[1]Levis was on detail to the DEA from the St. Bernard Parish Sheriff's Office Bureau of Narcotics.

approximately two hours while the house was searched.  No drugs or other evidence of illegal activity was found in either the initial search or in a second search conducted with the use of a drug dog.

The Michaliks filed their original complaint in November 1999, alleging that their home was searched unlawfully because the officers relied on stale information to determine that Taglialavore had stashed drugs at 406 E. St. Jean Baptiste.  In their original complaint, they sought damages and other relief based on alleged violations of the U.S. Constitution and Louisiana state law against the federal, state, and local law enforcement officers and their respective agencies and governmental entities, including the United States.

Because of the number of parties and claims involved, the procedural posture of this case is exceptionally complicated.  We will relate only what is necessary to understand the issues on appeal.

On November 20, 2001, the Michaliks filed their first amended and supplemental complaint, adding a claim under the Federal Tort Claims Act ("FTCA") against the United States, alleging violations of 42 U.S.C. §§ 1985 and 1986.[2]  The United States, along with other named federal defendants, filed a motion to dismiss the

---

[2]The United States previously had been dismissed without prejudice by the district court in October 2000 for failure to serve.  Thereafter, the district court granted the United States' motion to dismiss all named and/or fictitious federal employees on sovereign immunity grounds.

4

Michaliks' amended complaint. The district court dismissed the claim with prejudice because the Michaliks failed to exhaust their administrative remedies before filing, and more than six months had elapsed from the date on which the plaintiffs actually exhausted their administrative remedies. See 28 U.S.C. §§ 2675(a) and 2401(b).

The Michaliks submitted two additional amended complaints, naming federal defendants in their personal capacities and alleging the dual status of Levis as a DEA agent and member of the St. Bernard Parish Sheriff's Department.

B

We now turn to recount the procedural history of this litigation with respect to each defendant-appellant, beginning with Levis. Levis filed no answer to the Michaliks' third amended complaint, but instead filed a motion to dismiss, asserting qualified immunity and the judgment bar provision of the FTCA, 28 U.S.C. § 2676. The district court denied Levis's motion to dismiss and similarly denied Levis's motion to reconsider. On May 27, 2003, Levis filed a motion for summary judgment, again raising qualified immunity and the FTCA judgment bar. The district court denied the motion for summary judgment on August 4. Levis now appeals the district court's order denying him both dismissal on FTCA grounds and qualified immunity on federal law claims relating to the procurement of the warrant.

We next consider Toye and Guillot of the New Orleans Police Department. On January 8, 2003, the district court granted summary judgment on the basis of qualified immunity, dismissing all federal claims against all defendants, including Toye and Guillot. The Michaliks filed a Federal Rule of Civil Procedure 59 motion, arguing that the court's grant of summary judgment was premature in view of ongoing discovery. The district court granted the Michaliks' motion in part, reinstating federal claims against Toye as to the procurement of the search warrant. On May 19, the New Orleans Police defendants filed for summary judgment on the remaining claims. In its August 4 order, the district court dismissed all claims against every named New Orleans Police defendant, except Toye and Guillot. The district court reinstated the federal claims against Guillot, noting that material issues of fact exist as to Guillot's role in the forcible entry of the Michaliks' home. The district court also reinstated claims against Toye regarding the search and forcible entry of the home, as well as the procurement of the search warrant as noted above. Toye and Guillot now appeal the district court's order.

Finally, we turn to the St. Bernard defendants. On December 3, 2003, the St. Bernard defendants filed a motion for summary judgment on the basis of qualified immunity. The district court granted qualified immunity to the St. Bernard defendants on all federal excessive force claims arising out of the search itself, ordering the federal claims dismissed with prejudice. The district

court denied the Michaliks' motion for reconsideration, specifically holding that the police action during the search was objectively reasonable. On May 5, 2004, the St. Bernard defendants filed a separate motion for summary judgment to dismiss all remaining state law claims. In its August 4 order, the district court granted summary judgment to the St. Bernard defendants for state law claims arising out of the procurement of the warrant, and also held as a matter of law that the officers' conduct inside the house was not unreasonable under state tort law principles. The district court, however, denied the motion for summary judgment as to Hermann, Clark, and Jones on the federal and state law claims in conjunction with the forcible entry of the Michaliks' home. The St. Bernard defendants now appeal.

To sum up, the six defendants-appellants appeal the denial of qualified immunity for the following claims: (1) federal claims only against Levis for procurement of the warrant; (2) federal and state claims against Toye for procurement of the warrant, search of the home, and forcible entry of the home; (3) federal and state claims against Guillot for forcible entry of the home; (4) federal and state claims against the St. Bernard defendants for forcible entry of the home.[3]

---

[3]The Michaliks have moved to dismiss each of the defendants' appeals. These motions were carried with the case, but we do not separately address these motions in this opinion. We consider the arguments advanced in the motions briefing in conjunction with the arguments raised in the merits briefing in arriving at our conclusions.

7

The denial of a motion for summary judgment is generally not a final, appealable order over which we have jurisdiction. Under the collateral order doctrine, however, "a small class of interlocutory orders that (1) conclusively determine, (2) important issues, which are separate from the merits of the action, and (3) which would be effectively unreviewable on appeal from a final judgment, are deemed 'final' for the purposes of appeal." Reyes v. City of Richmond, Texas, 287 F.3d 346, 350 (5th Cir. 2002) (internal quotation and citation omitted). A district court's denial of qualified immunity, to the extent that it turns on an issue of law, is an appealable decision under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Johnson v. Jones, 515 U.S. 304, 313-18 (1995). We have no jurisdiction to hear an interlocutory appeal, however, when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist. See Reyes, 287 F.3d at 350-51.

We review a district court's denial of summary judgment de novo, applying the same standard as the district court. See Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Any

reasonable inferences are to be drawn in favor of the non-moving party.  Gowesky, 321 F.3d at 507 (citations omitted).

Evaluating qualified immunity is a two-step process.  First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right.  See Siegert v. Gilley, 500 U.S. 226 (1991).  A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000) (internal citations omitted).  If the plaintiff has alleged a violation of a clearly established right, the next step for us is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident.  See Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir. 1998) (citations omitted). The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity.  See, e.g., Bennett v. City of Grand Prairie, 883 F.2d 400, 408 (5th Cir. 1989).

A

(1)

We begin by examining the district court's denial of qualified immunity to Levis and Toye for claims related to procurement of the search warrant.[4]  The district court concluded that neither Levis

---

[4]The claims at issue are a federal Bivens action, Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and a 42 U.S.C. § 1983 action against Toye for Fourth Amendment violations based upon their roles in procuring the

nor Toye were subject to <u>Franks</u> liability[5] because the Michaliks identified no false statement attributable to Levis or Toye that appeared anywhere in the warrant application. Nevertheless, the district court denied qualified immunity to Levis and Toye, finding that there were material factual disputes as to whether they were liable under <u>Malley v. Briggs</u>, 475 U.S. 335 (1986). The district court concluded that if the officers are ultimately found to have played a significant enough role in procuring the warrant, their conduct may expose them to liability under the principles of <u>Malley</u>. 2003 WL 21805037, at *11-12. So, let us examine <u>Malley</u> and the district court's application of it to this case.

In <u>Malley</u>, the officer in charge of the investigation presented criminal complaints to the state judge charging the defendants with felony marijuana possession. The complaints were accompanied by supporting affidavits signed by the officer and by unsigned arrest warrants for the judge's signature. 475 U.S. at 337-39. On the basis of the complaints and affidavits, the judge

_____

warrant.

[5]The Supreme Court held in <u>Franks v. Delaware</u> that an officer may be liable when he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause regardless of whether he signed the application or was present when the affiant appeared before the judge. 438 U.S. 154, 155-56 (1978). The Fifth Circuit has interpreted <u>Franks</u> liability to also include liability for an officer who makes knowing and intentional <u>omissions</u> that result in a warrant being issued without probable cause. <u>See</u> <u>Hart v. O'Brien</u>, 127 F.3d 424, 448 (5th Cir. 1997), <u>abrogated in part by</u> <u>Kalina v. Fletcher</u>, 522 U.S. 118 (1997).

10

signed and issued the warrants.  <u>Id</u>.  The defendants were arrested, tried, and acquitted.  <u>Id</u>.  They then brought a § 1983 claim against the affiant officer, charging that he violated their Fourth Amendment rights by applying for warrants without a showing of probable cause.  <u>Id</u>.  The officer contended that he was entitled to absolute immunity from suit because the state court judge had approved, executed, and issued the warrants, exonerating the officer from further liability.  <u>Id</u>. at 339-45.  The Supreme Court described the issue thusly:  ". . . the degree of the immunity accorded a defendant police officer in a damages action under 42 U.S.C. § 1983 when it is alleged that the officer caused the plaintiffs to be unconstitutionally arrested <u>by presenting</u> a judge with a complaint and a supporting affidavit which failed to establish probable cause."  <u>Id</u>. at 337 (emphasis added).  The Court concluded that such an officer is not entitled to absolute immunity.  The Court further held, however, that the officer who applies for a search warrant may be entitled to qualified immunity if his actions are objectionably reasonable.  Throughout its opinion, the Court made clear that the specific and narrow question before it was "whether a reasonably well-trained officer in petitioner's position would have known that <u>his affidavit</u> failed to establish probable cause and that he should not have <u>applied</u> for the warrant."  <u>Id</u>. at 345 (emphasis added).  Thus, our reading of the case makes clear to us that <u>Malley</u> specifically decided only

11

whether the officer who actually presents or applies for the warrant is liable.

The district court here, however, stated that "[t]he principles enunciated in <u>Malley</u> apply not only to those officers who sign and present the warrant to the issuing judge but also to those officers who prepare the warrant application." 2003 WL 21805037, at *10. The district court cited <u>Bennett v. City of Grand Prairie</u>, 883 F.2d 400, as support for this understanding of <u>Malley</u>. We agree with the district court that <u>Bennett</u> seems to move the <u>Malley</u> holding a step forward.

In <u>Bennett</u>, several officers were engaged in the investigation, preparation, and presentation of the facts that ultimately were presented to the magistrate judge who issued the arrest warrant. 883 F.3d at 401-03. The detective in charge of the investigation prepared, but did not present, the supporting affidavit. <u>Id</u>. Under the procedures of that police department, the affiant -- the officer who actually signed and presented the affidavit to the judge -- acted only in a perfunctory role; that is, he had no knowledge of the facts, but depended solely upon the supplied affidavit.[6]  <u>Id</u>. The investigators, the detective in

---

[6]Under such circumstances, we were prompted to chide police departments to "seek to provide magistrates with warrant applications from the law enforcement official most directly involved in the investigation and most directly involved with the facts stated in the affidavit." <u>Id</u>. at 407.

12

charge, and the affiant were sued under § 1983 for effecting an arrest without probable cause.  Id.

Our opinion in Bennett focused primarily on the question of whether probable cause supported the arrest of the two plaintiffs -- not on the nuances of liability under Malley.  We were concerned largely with the detective who prepared the affidavit, and we addressed in particular the reliability of the facts that he used to make allegations in the affidavit.  With respect to the narrow Malley issue, we must say that the opinion is not absolutely clear that the detective's liability rested explicitly on Malley.  We did assume, for purposes of assessing the detective's Fourth Amendment liability and his entitlement to qualified immunity, that the facts known to the detective would be insufficient to give him probable cause to arrest the defendant and that the facts in the affidavit that he prepared were insufficient to establish probable cause for the arrests.  Id. at 408.  In assuming the detective's Fourth Amendment liability as the preparer of the affidavit, we made only a short reference to Malley:  "A police officer may be held liable in his individual capacity for filing an application for an arrest warrant without probable cause, the Supreme Court held in Malley v. Briggs."  Id. at 409 (emphasis added).  Citing Malley, we noted that with respect to the detective the question was "'whether a reasonable well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."  Id.  Without

13

addressing that the detective had not, in fact, applied for the warrant, we went on to find that the detective's actions were objectively reasonable and he was entitled to qualified immunity. We will return later to the district court's application of Malley to deny qualified immunity to Levis and Toye on the warrant claims.

(2)

Turning now to the Michaliks' arguments concerning the warrant claims, they primarily urge that we lack appellate jurisdiction because the denial of qualified immunity here is based on issues of fact relating to Levis's and Toye's role in procuring the warrant. Johnson, 515 U.S. at 313; Reyes, 287 F.3d at 350-51. This argument, however, assumes that there is no issue of law regarding the applicability of Malley and that Malley applies to the alleged facts.

In contending that Malley establishes liability for non-affiant officers, the Michaliks argue that the Supreme Court has cautioned against reading references to "officer" narrowly when considering reasonableness under the Fourth Amendment -- that the term "officer" should encompass more persons that a single officer. They acknowledge that Malley addressed specifically the liability of the affiant officer, but giving an inclusive meaning to "officer," they assert that the requirements of Malley are applicable to any officer, however involved in the procurement process, who had no reasonable ground for believing that the

14

warrant was properly issued.[7]  In support, they cite <u>United States v. Leon</u> as holding that the Fourth Amendment's exclusionary rule is appropriate where <u>officers</u> have no reasonable ground for believing that the warrant was properly issued.  468 U.S. 897, 923 n.24 (1984).  The Michaliks point out that the Supreme Court in <u>Malley</u> said that the "same standard of objective reasonableness applied in the context of a suppression hearing in <u>Leon</u> defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest."  475 U.S. at 345.

On the other hand, Levis and Toye assert that <u>Malley</u> only applies to affiant officers and that an extension of liability to non-affiant officers is inconsistent with the <u>Malley</u> rationale because such officers do not have the opportunity to consider the application as a whole and thus cannot make reasonable judgment as to whether the warrant is truly supported by probable cause.  Furthermore, Levis and Toye contend that such an extension would have adverse effects on legitimate law enforcement functions by

---

[7]The Michaliks further assert that the collective knowledge doctrine/fellow officer rule is applicable to Levis.  Citing a district court opinion from Massachusetts, the Michaliks argue that a non-affiant participant cannot use another officer as a shield.  <u>United States v. Bater</u>, 830 F.Supp. 28, 36-37 (D. Mass. 1993) (considering facts analogous to <u>Leon</u>).  We find this reasoning unpersuasive here for the reasons articulated by the district court.  2003 WL 21805037, at *4.

Nor are we persuaded by the Michaliks' arguments regarding supervisory capacity.  The district court correctly noted "that the foundation upon which personal civil liability for constitutional torts and the doctrine of qualified immunity are based is individual conduct not imputed acts."  2003 WL 21805037, at *4.

15

discouraging officers from providing information to be used in a warrant application.[8]

(3)

Our understanding of <u>Malley</u> liability differs somewhat from the district court and from the parties. Our analysis of <u>Bennett</u> convinces us that, according to this precedent, liability under <u>Malley</u> may lie not only against the affiant, but also against an officer who is in the position of the detective in <u>Bennett</u>, that is, an officer who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared.[9] Such an officer is in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions. Accordingly, such an officer, who is not the affiant, may be held liable, along with the affiant, under the principles of <u>Malley</u>. We are unwilling, however, to extend such liability on the basis of <u>Bennett</u>, under the <u>Malley</u> rationale,

---

[8]Neither Levis nor Toye provide us any helpful guidance in interpreting <u>Bennett</u>. Toye does not cite <u>Bennett</u> in his briefs, and <u>Levis</u> simply notes that "<u>Bennett</u> did not . . . hold that an officer could be subject to liability under <u>Malley</u> for preparing a warrant, or discuss the issues that would pertain to establish such a new rule of law."

[9]We do not read <u>Bennett</u> to extend <u>Malley</u> liability to the two other officers involved in the investigation and sued by the plaintiffs. Such fleeting reference to the conduct and liability of these officers is insufficient for us to draw any conclusion in relation to <u>Malley</u>. <u>Id</u>. at 408. To be sure, however, it would extend <u>Malley</u>'s holding beyond its underlying rationale to hold any officer liable for the arrest warrant who neither prepared nor presented the application.

16

beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application. Here, it is undisputed that no officer other than Fitzpatrick, the affiant officer, was responsible for the preparation or presentation of the warrant application to the judge. Although issues of fact may exist as to the roles that Levis and Toye played in the investigation, and in providing some of the information to Fitzpatrick, these issues of fact are not material to the warrant claim because none of the evidence suggests that Levis and/or Toye prepared or presented the warrant or were fully responsible for its preparation or presentation. Accordingly, we hold that the district court erred in denying qualified immunity to Levis and Toye on claims related to the procurement of the search warrant.[10]

B

We next consider the denial of qualified immunity to Toye for claims relating to the actual search of the house itself. Concluding that material issues of fact exist as to whether Toye was present during the search, the district court noted that if Toye were present at the search,

> then Toye would be additionally liable for executing the warrant. The Court has already

---

[10]Levis also appeals the district court's denial of summary judgment asserting that he is entitled to have the <u>Bivens</u> claims dismissed on account of the FTCA's judgment bar provision, 28 U.S.C. § 2676. Because our finding that Levis is entitled to qualified immunity on the <u>Bivens</u> action ends the litigation against him on this claim, we need not address claims with respect to § 2676.

17

> determined that the executing officers were entitled to qualified immunity based upon their lack of knowledge upon which to question the seemingly valid warrant. However, the same reasoning would not apply to an officer in Toye's position who because of his participation in procuring the warrant perhaps should have known that probable cause was lacking.

2003 WL 21805037, at *12 (citing <u>Mendenhall v. Riser</u>, 213 F.3d 226, 231-32 (5th Cir. 2000)).

To the point, the basis of denying qualified immunity to Toye on claims relating to the search was based on his liability in procuring the warrant. We have exonerated him from that liability under <u>Malley</u>. Toye can no more be charged with knowledge of probable cause than can the other executing officers. It follows that the district court erred in denying Toye qualified immunity for the search of the house. The factual dispute as to whether Toye was present at the time of the search is obviously irrelevant to this determination.

Accordingly, we reverse the district court's denial of qualified immunity to Toye on claims related to the search of the Michaliks' home.

C

We finally consider the claims against Toye, Guillot, and the St. Bernard defendants relating to the forcible entry of the Michaliks' home. These claims are referred to by the parties and the district court as the knock and announce claims. The district court denied qualified immunity to these defendants because issues

of fact remain as to whether the entry was reasonable under state law and the Fourth Amendment. See 2003 WL 21805037, at *14. The district court specifically noted that "[a]ssuming that the officers did in fact knock, a point which in and of itself is not clear, the Court questions whether the officers waited long enough for the Plaintiffs to respond . . . ." Id. Taking the evidence in the light most favorable to the Michaliks, the district court stated that it "would have no choice but to conclude that the officers announced their presence simultaneously with breaching the door." Id. Because the officers had not pointed to any evidence to justify such an entry, the district court concluded that qualified immunity was inappropriate.[11] Id.

Guillot and the St. Bernard defendants argue that the Michaliks have offered no evidence that the officers acted unreasonably. They further and correctly note that the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. Bazan v. Hidalgo County, 246 F.3d 481,

[11]Guillot and the St. Bernard defendants argue that the district court erred in considering the knock and announce claim because the Michaliks never alleged the claim at any time before oral argument on the summary judgment motion. The Michaliks assert that the knock and announce claim was first briefed in the January 2004 Motion for Reconsideration, and furthermore, common law knock and announce principles are part of any Fourth Amendment reasonableness inquiry. See Wilson v. Arkansas, 514 U.S. 927 (1995). The district court noted that even though the knock and announce claim was raised for the first time "at this late stage," it considered the issue because it is a part of the Fourth Amendment reasonableness inquiry. We defer to the district court in its management of this case and its ruling on this matter.

19

489 (5th Cir. 2001). An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. Id. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct. Id. Guillot and the St. Bernard defendants assert that the Michaliks have not demonstrated that there was a failure to knock and announce in this case. They assert that the Michaliks never alleged that there was a failure to knock and announce their presence or a failure to wait a reasonable time before entering the plaintiffs' home. Even if there were a failure, they assert that uncontroverted facts demonstrate that their actions were objectively reasonable in the light of the circumstances.

Toye additionally argues that no evidentiary basis exists for determining that he may have been present during the forcible entry or search of the Michaliks' home. He contends that he has presented documentary evidence proving that, during the execution of the warrant at the Michaliks' home, he was executing a search warrant at another location in connection with the same "bust".

The Michaliks argue material issues of fact preclude our jurisdiction over the interlocutory appeal of this claim; there is conflicting testimony as to who used the battering ram, who entered the residence first, how long the officers waited, and whether

20

there was a knock and announcement at all. Furthermore, the Michaliks assert that Toye's presence at the Michaliks' home when the entry was made is disputed, pointing to testimony of Guillot as well as evidence questioning the veracity of Toye's documentary evidence. In the light of the conflicting testimony, the Michaliks further assert that the officers' failure to present sufficient evidence of exigent circumstances makes summary judgment inappropriate.

Based on our review of the record, we cannot dispute that material issues of fact remain as to the knock and announce claims. Although Guillot and the St. Bernard defendants properly explain the burdens of the respective parties, the district court found that more than conclusory allegations and bare assertions underlie the Michaliks' contentions regarding the facts. It seems to us that the arguments of Toye, Guillot, and the St. Bernard defendants do not focus on the existence of evidence, but instead on the weight that should be given to it. We thus conclude that these material issues of fact deprive this court of jurisdiction to entertain this interlocutory appeal asserting qualified immunity to Toye, Guillot, and the St. Bernard defendants.

### III

For the foregoing reasons, we hold that the district court erred by denying qualified immunity to (1) Levis and Toye on claims relating to the procurement of the search warrant and (2) Toye on

21

claims relating to the search of the Michaliks' home.[12]  Because the district court found that material issues of fact exist, we dismiss for lack of jurisdiction the appeal of claims related to the forcible entry of the Michaliks' home by Toye, Guillot, Hermann, Clark, and Jones.  Stated differently, the only claims that remain to be tried are those claims against Toye, Guillot, Hermann, Clark, and Jones for the forcible entry of the home.  Accordingly, we remand the case for further action and proceedings not inconsistent with this opinion.

REVERSED and RENDERED, in part;

DISMISSED, in part; and REMANDED.

---

[12]It follows that qualified immunity is also granted to Toye with respect to the concomitant state law claims relating to the procurement of the search warrant and search of the Michaliks' home.  The appeals of state law claims remaining against Guillot, and the St. Bernard defendants are dismissed in accordance with our dismissal of the appeal of federal claims for want to jurisdiction.