United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-31157

ZINA DANIEL, Etc; ET AL,

Plaintiffs,

ABREACE L. DANIEL, Officer, Individually
and as Administrator of the Estates of the Minors,
Kristoffer Daniel, Branden Daniel and Jardyn Daniel,

Plaintiff-Appellant,

versus

EDWIN P. COMPASS, III,  Individually and in His
Official Capacity as Superintendent of the New Orleans
Police Department; DAVID BENELLI, Lieutenant,
Individually and in his Official Capacity as Commander
of the New Orleans Police Department Sex Crimes Unit;
MICHAEL J. BOSSETTA, Sergeant, Individually and in
his Official Capacity as a Sergeant with the New Orleans
Police Department Sex Crimes Unit; CITY OF NEW ORLEANS,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:04-CV-2034

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

## INTRODUCTION

Abreace Daniel asserts a 42 U.S.C. § 1983 claim based on his arrest on charges of aggravated rape, attempted murder, aggravated battery, and second degree kidnapping. He alleges that the Appellees applied for a warrant for his arrest despite the fact that the application lacked probable cause. The district court granted qualified immunity to the defendants and dismissed the remaining state law causes of action. Daniel appeals the grant of qualified immunity and the dismissal of the remaining claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Daniel, a New Orleans Police Department ("NOPD") officer, was arrested on July 23, 2003, after the victim of a sexual assault that took place in 2000 identified him as her attacker. Attention focused on Daniel when the officer in charge of the case, Sergeant Mike Bossetta, learned that Daniel was a suspect in an unsolved 1994 sexual assault that bore some similarities to the attack in 2000. At the time of Daniel's arrest, Bossetta believed that both victims were forced by their attackers to remove one shoe. Police weapons were used in both attacks, and the victims, both white women with blonde hair, were similar as well. The victim of the 2000 attack also described a car that was similar to Daniel's. Based on all these similarities, Bossetta decided to conduct a photo lineup including Daniel's picture. The victim and a witness to the abduction both chose Daniel out of the lineup.

After the identification, Bossetta sought a warrant for Daniel's arrest at a probable cause hearing before the Orleans Parish Criminal District Court. The judge agreed that there was probable

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

cause and granted the arrest warrant as well as a search warrant for Daniel's home and car. Daniel was arrested, but the prosecutor declined to press charges because DNA found near the scene of the rape did not match Daniel's. The prosecutor also testified that she found the identification procedure to be unreliable. Daniel was removed from the police force after his arrest, but he was reinstated after the charges against him were dropped.

Daniel, his wife, and the estates of his children filed a § 1983 lawsuit in district court arising from damages related to Daniel's arrest based on the theory that he was arrested without probable cause. They named as defendants Bossetta in his official and personal capacities; Edwin Compass, Superintendent of the NOPD, in his official and personal capacities; David Benelli, Commander of the NOPD Sex Crimes Unit, in his official and personal capacities; and the City of New Orleans. The district court granted the defendants' motions for summary judgment based on qualified immunity and for dismissal on the plaintiffs' pendant state claims because without the § 1983 claims there was no supplemental jurisdiction over the state claims. Only Daniel appeals to this court.

## DISCUSSION

This court reviews a motion for summary judgment de novo. *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005). This court views all disputed facts in the light most favorable to the non-moving party to determine if there is any material matter still in dispute. *Id.* In order to determine if qualified immunity is proper, this court undertakes a two-step inquiry. First, has a violation of a clearly established constitutional right been asserted? Second, were the defendants' actions objectively unreasonable when measured against clearly established law? *Schultea v. Wood*, 27 F.3d 1112, 1115 (5th Cir. 1994), *aff'd in part*, 47 F.3d 1427 (5th Cir. 1995) (en banc).

3

Daniel appeals the grant of qualified immunity to all the defendants. A governmental entity is liable for damages under § 1983 only to the extent that constitutional violations result from official policy or "custom." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). There is no vicarious liability against a governmental entity for the actions of its employees unless there is a showing of a policy or practice approved by the entity. *Id.* at 690-91 (noting that the approval of the policy or practice does not have to be formal). Additionally, the suits against the officers in their official capacity are basically suits against the municipality. *Id.* at 690 n.55.

Daniel does not allege that any specific ordinance, regulation, custom, or policy of the City of New Orleans led to his false arrest. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Instead, he relies on the individual actions of Bossetta entirely, which is not enough to make out municipal liability because there is no consistent policy or practice of the municipality to present insufficient warrants. *Id.* Also, Daniel does not allege a claim of municipal liability based on the fact that the Appellees are "final policymaker[s] responsible for [the decision to seek a warrant]." *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). In fact, none of them are, as final authority to seek a warrant for a NOPD officer is vested with the NOPD Public Integrity Bureau. Therefore, Daniel's claims against the city and against the officers in their official capacity were properly dismissed on summary judgment.

Daniel also alleges claims against Officers Compass and Benelli individually because he believes they approved the application for the warrant for his arrest. They did not have any discernable role in the preparation or presentation of the warrant to the magistrate; therefore, they have no direct § 1983 liability. *See Michalik*, 422 F.3d at 261. Although both Compass and Benelli have supervisory roles with respect to Bossetta, there is no respondeat superior in cases like these

4

where there is no direct action or causal link between the supervisor's conduct and the violation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Daniel does not allege that Compass or Benelli were involved in obtaining the warrant or were in a position to know that the warrant application was invalid. The district court properly granted immunity to Compass and Benelli.

In order to determine if immunity was properly granted to Bossetta, this court uses the two-step immunity inquiry. First, the court must consider whether Bossetta's warrant affidavit lacked probable cause at the time it was presented to the magistrate such that it was a Fourth Amendment violation. If a constitutional violation is shown, the court must consider whether it was objectively unreasonable for Bossetta to present it to a judicial officer in the first place. This type of claim is judged under the rubric of *Malley v. Briggs*, 475 U.S. 335 (1986), which held that when a warrant application "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *id*. at 345, there is no qualified immunity for the officer presenting the warrant. Put another way, the Court stated that there is no protection for a warrant that no "reasonably competent officer" would have presented; however, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341.

First, Daniel argues that Bossetta's warrant application was insufficient because it did not show probable cause on its face. Daniel alleges flaws in each piece of evidence that was presented to the Criminal Court Commissioner who granted the warrant. Unfortunately, many of the holes that Daniel points to became obvious only much later in the investigation. At the time he obtained the warrant, Bossetta believed that the modus operandi of the crimes were virtually identical. Both victims reported that they were forced to remove a shoe, and both victims reported that police weapons were used in their attacks. This information, combined with the fact that Daniel had never

5

been cleared as a suspect in the prior crime, raised suspicion in Bossetta's mind that Daniel might also be a suspect in the 2000 assault. Daniel's arguments that the victim of the 2000 assault was not required to remove her shoe are irrelevant because that information did not become known to Bossetta until the victim's deposition, which took place after he sought the warrant.

Daniel also alleges that it was error to note that his car was similar to the one the victim identified as belonging to her attacker. Based on this allegation alone, there does not appear to be any error because Bossetta noted merely that the cars were similar, not that the victim had actually identified Daniel's car. The discrepancies that Daniel points out "are not 'clearly critical' to a finding of probable cause." *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996) (citing *Hale v. Fish*, 899 F.2d 390, 402 (5th Cir. 1990)).

The most serious allegations that Daniel raises are those related to the lineup procedure. The prosecutor in this case stated that the lineups were prejudicial and suggestive; the flaws in the lineups, when combined with the fact that Daniel's DNA was not found at the scene of the 2000 assault, were the reasons she gave for not pursuing the charges. First, Bossetta told the victim to pick out the person "most familiar to her" and did not verify after she picked Daniel that she thought he was actually her attacker. After picking Daniel out of a black and white photo lineup, the victim was given a color photo lineup. This second lineup contained different pictures than the first line up did, with the exception of Daniel's. Daniel also believes the witness saw the backs of these lineups after identifying him and that his photo was in some way marked on the back, thus prejudicing the victim. He argues that these errors made the lineup unduly suggestive.

The Supreme Court has held that "[u]nlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Manson*

6

*v. Brathwaite*, 432 U.S. 98, 113 n.13 (1977). Because the mistakes in the lineup are not themselves constitutional violations, Daniel must show that Bossetta violated the Fourth Amendment by presenting the information obtained from the lineups to the judge. At most, Daniel has alleged that Bossetta was negligent in conducting the lineups as he has presented no evidence of knowing or intentional mistakes in Bossetta's conduct of the lineup. *See Campbell*, 43 F.3d at 977. Without more than negligence, there was no error in presenting the lineup identification to the Criminal Court Commissioner.

Even if Daniel did allege a Fourth Amendment violation, he has not shown that Bossetta's actions were objectively unreasonable. In *Morin*, the Fifth Circuit rejected a challenge to qualified immunity when the plaintiff alleged only that the evidence in the warrant was insufficient. The court held that without assembling "facts indicating that no reasonable police officer would have believed [the evidence]," there was no basis to deny the defendants qualified immunity despite the plaintiff's allegations to the contrary. 77 F.3d at 121. Similarly, Daniel has alleged only that Bossetta does not deserve qualified immunity and has not presented any facts that no reasonable police officer would have sought a warrant based on the evidence that Bossetta collected.

Daniel also argues that the application for his arrest warrant was objectively unreasonable because it was a pretext for gathering information against him in the 1994 assault. This argument is unavailing. Even if Daniel could produce evidence of such a claim, the Supreme Court, in denying an officer absolute immunity, pointed out that, at common law, an allegation of insufficient probable cause on the part of a complaining witness was judged fault-worthy only if malice was shown. In order to protect efficient governmental function, the Court's § 1983 qualified immunity jurisprudence has rejected malice and instead relies on a determination of whether the officer acted in an objectively

7

reasonable manner. *Malley*, 475 U.S. at 341 (discussing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). The intent of an officer in seeking a warrant is irrelevant in establishing liability. Therefore, even if Daniel could show that Bossetta sought a warrant for his arrest in the 2000 crime as a pretext, this court would have to consider the facial reasonableness of the warrant.

Daniel alternatively makes a *Franks* challenge, arguing that Bossetta deliberately misrepresented or omitted some relevant, material evidence in his warrant application. A *Franks* challenge is not successful unless it is clearly alleged which facts are falsified or omitted. *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). The only possible *Franks* allegation that Daniel makes is that Bossetta failed to disclose to the magistrate judge issuing the warrant that the victim had undergone hypnosis in order to recover memories of her attack at some time prior to making her identification of Daniel. However, Daniel alleges neither that this information was necessary to make a probable cause determination nor that Bossetta deliberately or recklessly omitted them. *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002). Without these allegations, Daniel does not assert a sufficient *Franks* claim.

Daniel also appeals the district court's dismissal of his state law claims. When all federal claims have been resolved, the district court's decision to dismiss state law claims for lack of supplemental jurisdiction is reviewed for abuse of discretion. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004); 28 U.S.C. § 1367(c)(3). Generally, a district court "may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendant jurisdiction." *Priester*, 354 F.3d at 425. Daniel's arguments focus on the merits of his state law claims, which are not before this court. The district court did not abuse its discretion by dismissing the state law claims

8

after it granted qualified immunity on Daniel's § 1983 claims.  The state law claims were dismissed without prejudice, so Daniel is free to re-file them in state court.

## CONCLUSION

Based on the above, we affirm the district court's grant of summary judgment and dismissal.

9