# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2011

No. 10-31036

Lyle W. Cayce
Clerk

JULIE BLANCHARD; SOPHISTICATED SALADS, L.L.C., doing business as Sophisticated Café & Grill; 10-40 DINER, INC.,

Plaintiffs - Appellants

v.

GREGORY J. LONERO, Individually and In his Official Capacity, as a Duly Commissioned Law Enforcement Officer; MICHAEL PIZZOLATO, Individually and In His Official Capacity as a Duly Commissioned Law Enforcement Officer; MICHAEL MILLER, Detective; Individually and In His Official Capacity as a Duly Commissioned Law Enforcement Officer; NEWELL NORMAND,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-4023

Before BENAVIDES and PRADO, Circuit Judges, and ALVAREZ, District Judge.[*]

PER CURIAM:[**]

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to FIFTH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIRCUIT RULE 47.5.4.

No. 10-31036

In this action alleging unlawful searches and seizure, unlawful arrest, and malicious prosecution, Plaintiffs-Appellants Julie Blanchard, Sophisticated Salads, L.L.C. and 10-40 Diner, Inc. appeal the district court's judgment dismissing their claims against Defendants-Appellees Gregory Lonero, Michael Pizzolato, Michael Miller, and Newell Normand.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Gregory Lonero and his wife, Eileen Lonero (together, the "Loneros"), owned property located at 2309 David Drive in Metairie, Louisiana.  At all relevant times, Gregory Lonero was also employed as a deputy with the Jefferson Parish Sheriff's Office ("JPSO").  On or about April 6, 2005, Julie Blanchard ("Blanchard") and 10-40 Diner, Inc., of which Blanchard was sole stockholder and representative, rented the property from the Loneros to operate a restaurant.[1]  As part of the lease, Blanchard, "acknowledge[d] that the restaurant equipment upon the leased premises belongs to the Lessor" and that "[e]quipment [was] subject to Lessee's use and obligations hereunder including, but not limited to, Lessee's obligation to insure, repair, make replacemnts [sic], maintain and pay taxes related to such equipment."  The lease further provided that "[s]hould Lessee begin to remove . . . equipment," such event would constitute a default under the lease.

At some point on or before July 30, 2005, after experiencing maintenance problems with the property, Blanchard abandoned the leased property.  On July 30, 2005, Sidney Aiavolasiti, an officer with the JPSO and a friend of Gregory Lonero, called Mr. Lonero, who was out of town, and reported that he had seen equipment being removed from the leased premises.  Neither Mr. Lonero nor

---

[1]  Blanchard operated the restaurant on the property as Sophisticated Salads, LLC. As there is no division of interest relevant to the Court's analysis, the Plaintiffs-Appellants are hereafter referred to simply as Blanchard.

2

No. 10-31036

Mrs. Lonero gave Blanchard permission to remove the equipment from the property.

After learning from her husband that equipment had been removed from the property, Eileen Lonero went to the property and observed through the windows that the equipment was missing. Mr. Lonero also requested, through his friend Aiavolasiti, that an officer go to the location. JPSO Deputy Michael Pizzolato ("Pizzolato") responded to that request and reported to the scene. According to Deputy Pizzolato's report, because Mrs. Lonero did not have access to the building, a "complete inventory of the items missing could not be documented," and he was limited to conducting "a brief inspection of the exterior of the business." A locksmith was called, however, and an invoice, signed by Deputy Pizzolato, indicates the locksmith opened the front door and installed new locks on the building.

On August 1, 2005, the JPSO assigned Detective Michael Miller ("Miller") to the investigation. That same day, Detective Miller and Mr. Lonero visited the property and completed a walk through. Mr. Lonero gave Detective Miller a copy of the lease and a list of equipment that Mr. Lonero determined to be missing from the property. Mr. Lonero told Detective Miller that, according to the lease, the equipment was to stay inside the building. Mr. Lonero also told Detective Miller that a fellow officer, who had dated Blanchard's roommate, Kathleen Frost ("Frost"), told Mr. Lonero that Blanchard had stored the missing property at a storage center on Jefferson Highway.

On August 2, 2005, Detective Miller spoke with Frost. Frost informed Miller that she saw Blanchard remove equipment from the property and place the equipment in a storage unit. Detective Miller also spoke with Ahmad Abulehawa ("Abulehawa"), the previous owner of 10-40 Diner, Inc., from whom Blanchard had purchased the company in April 2005.[2] Abulehawa had also

_____

[2] Detective Miller's report and Abulehawa's statement are both dated August 3, 2005. Information obtained from Abulehawa is included in the warrant application, however, which

operated 10-40 Diner, Inc. as a tenant in the Lonero's building. Abulehawa confirmed that the equipment in the building was owned by the Loneros, and that he had informed Blanchard of that fact when he sold the company to her.

Thereafter, Detective Miller prepared an application for a search warrant of Blanchard's storage units. Detective Miller did not attach a copy of the lease to the application. On August 2, 2005, a Louisiana State Judge signed the search warrant.

That night, Detective Miller executed a search of the storage units and found property that appeared to be the missing restaurant equipment. Detective Miller then called Gregory Lonero and requested he come to the unit to identify the property. Mr. Lonero arrived and assisted the officers in removing items from the storage units. A JPSO employee photographed the property identified by Mr. Lonero as belonging to him, and Detective Miller then released the equipment to Mr. Lonero.

On August 3, 2005, Blanchard wrote to the Loneros, detailing the problems she had encountered with the leased premises. The letter also stated:

> I just had the opportunity to review the lease form and observed that all of the restaurant equipment belongs to the lessor. I will make arrangements to return. I was working under the impression that all the restaurant equipment belonged to 10-40 diner [sic] Inc.

Gregory Lonero received the letter days after it was written, but had already taken the equipment in the storage unit into his possession.

On August 4, 2005, Detective Miller prepared an affidavit for an application for an arrest warrant for Blanchard for theft over $500 and illegal possession of stolen things over $500. In the affidavit, Detective Miller stated:

> Ms. Blanchard agreed to the terms of the lease, which stated that she was to maintain and upkeep the equipment but that she did not own it. It was determined that an estimated $15,000.00 worth of

was signed by the Judge on August 2, 2005.

> equipment ranging from ovens and stoves to napkins dispensers and utensils had been removed from within the building without any permission or authorization of the lessors.

Detective Miller did not attach a copy of the lease to the arrest warrant application. A Justice of the Peace signed the arrest warrant on August 4, 2005.

That same day, Julie Sanders ("Sanders"), a friend of Blanchard, called Detective Miller and advised him that Blanchard had been trying to get in touch with her lawyer. Sanders told Detective Miller that Blanchard spoke with her attorney, and had been advised to return all of the equipment she had removed from the property. Detective Miller informed Sanders that an arrest warrant had already issued and that the property had already been recovered, but that a flat grill and char-grill had not been recovered. Detective Miller asked Sanders to convey a request to Blanchard to return those items, and that he would allow Blanchard to voluntarily surrender. The two grills were subsequently returned, and released to Mr. Lonero, and, on August 15, 2005, Blanchard voluntarily surrendered to Detective Miller.

Thereafter, criminal proceedings were instituted against Blanchard for theft. On January 31, 2007, a state district judge granted Blanchard's motion to quash the bill of information, stating:

> Now considering that the State's responses to the accused's Bill of Particulars establish that at all relevant times the kitchen equipment referred to in the outstanding Bill of Information was in the lawful possession of the accused and was not the subject of a theft; and after hearing the argument of counsel, the Court, considering the law to be in favor of the accused, for the reasons orally assigned; . . . the accused's Motion to Quash is hereby GRANTED . . . .

Thereafter, on July 31, 2006, Plaintiffs-Appellants filed the instant action in the United States District Court against Mr. Lonero, Deputy Pizzolato,

No. 10-31036

Detective Miller, and the JPSO sheriff, Newell Normand,[3] alleging various state and federal causes of action for unlawful search, unlawful arrest, malicious prosecution, and conversion. On December 10, 2008, the district court granted summary judgment on Plaintiffs-Appellants' § 1983 claims against Defendants, in their individual capacities, arising from the August 1, 2005 search of the property. On May 28, 2009, the district court granted Defendants-Appellees' motion for summary judgment on the remaining claims. Thereafter, on March 24, 2010, the district court, on motion to reconsider, reinstated Plaintiffs-Appellants' conversion claims against Detective Miller and Gregory Lonero. Subsequently, the Plaintiffs-Appellants filed an unopposed motion to dismiss the remaining conversion claim without prejudice, so that final judgment could be entered and appeal could proceed. On October 14, 2010, after granting the unopposed motion, the district court entered judgment for the Defendant-Appellees, and this timely appeal followed.

### STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009) (internal quotation marks omitted). Summary judgment should be rendered if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. Cty. of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* This Court may affirm summary judgment "on any

---

[3] Sheriff Normand was added by amended pleading on January 7, 2008.

6

grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## ANALYSIS

Blanchard appeals the district court's grant of summary judgment with regard to her claims that (1) Deputy Pizzolato and Gregory Lonero unlawfully searched the property on June 30, 2005,[4] (2) Detective Miller and Gregory Lonero supplied false and misleading information to obtain a search warrant of her storage units, (3) Detective Miller and Gregory Lonero supplied false and misleading information to obtain an arrest warrant, (4) Detective Miller and Gregory Lonero maliciously prosecuted her, and (5) Sheriff Normand was vicariously liable for the unlawful arrest and malicious prosecution. The Court addresses each purported error in turn.[5]

## I.    June 30, 2005 Search of the Property

Blanchard argues that a genuine dispute of material fact exists as to whether Deputy Pizzolato, at Gregory Lonero's urging, conducted a search of the property on June 30, 2005. Deputy Pizzolato's report states that only an external search was conducted, which is confirmed by Eileen Lonero. Blanchard maintains, however, that the existence of the locksmith invoice, which indicates that the locksmith opened the front door, creates a genuine dispute about whether Deputy Pizzolato entered and searched the property.

An individual's right to claim protection from unreasonable search and seizure "depends not upon a property right in the invaded place but upon

---

[4] Blanchard does not appeal the district court's grant of summary judgment with regard to the August 1, 2005 search of the property.

[5] As Blanchard makes no argument and cites no legal authority in support of her state law claims for unlawful search and arrest, the Court deems Blanchard to have waived appeal of the district court's grant of summary judgment as to them. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.2 (5th Cir. 2008) ("Arguments inadequately briefed on appeal are waived.").

whether the person who claims the protection of the [Fourth] Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). To demonstrate a legitimate expectation of privacy, a plaintiff must show that she has a subjective expectation of privacy in the premises searched and that her expectation of privacy is one that society would recognize as objectively legitimate. *See United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996). An individual, however, has no expectation of privacy over abandoned property. *See United States v. Edwards*, 441 F.2d 749, 752 (5th Cir. 1971) ("It is clear that this personal right to Fourth Amendment protection of property against search and seizure is lost when the property is abandoned.") The test of whether an individual abandoned property, for Fourth Amendment purposes, is whether the individual "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc). The intent of the individual to abandon the property "may be inferred from words spoken, acts done, and other objective facts." *Id.*

Here, putting aside the issue of an existence of a genuine dispute as to whether Deputy Pizzolato entered the property, such a dispute is not material in light of Blanchard's abandonment of the property. By the time Deputy Pizzolato arrived at the property, Blanchard had removed all of her belongings and all of the equipment in the building, and departed. Moreover, she had informed Mr. Lonero about her intent to close her business earlier that week. Blanchard identifies no facts in the record to create a genuine dispute over whether she "voluntarily discarded, left behind, or otherwise relinquished [her] interest in the property." *See Colbert*, 474 F.2d at 176.

Blanchard had no legitimate expectation of privacy under the Fourth Amendment in the property at the time of the disputed search because, by that

time, she had abandoned the property. Accordingly, summary judgment was appropriate on her unlawful search claim.

## II.    August 2, 2005 Search of the Storage Units

Blanchard next argues the search of the storage units was unlawful because Detective Miller made intentionally misleading statements and excluded exculpatory information when preparing his affidavit to support a search warrant of Blanchard's storage units. In particular, Blanchard agues the following statement materially misstated the terms of the lease:

> Mr. Lonero pointed out that in the lease agreement dated April 6, 2005 signed by Greg Lonero and Eileen Lonero, Lessor, and Julie Blanchard, 10-40 Diner, Lessee . . . , in the section titled Article 30 Miscellaneous Provisions Regarding Equipment that is part of the building and is leased to the Lessee. The building and equipment specified in the lease is owned by Mr. Lonero and is not to be removed or replaced without expressed permission from Mr. Lonero. Mr. Lonero then pointed out a two page list that details all of the equipment that was part of the lease and that was now missing from the interior of the business.

Blanchard contends Detective Miller's statement falsely implies that the lease states the equipment is part of the building, the equipment is not to be removed, that the lease did not state that equipment is to be replaced by the Lessee, and that the two page list of equipment was incorporated in and attached to the lease. Blanchard further argues that by failing to provide the signing Judge with a copy of the lease, Detective Miller excluded exculpatory evidence that demonstrated Blanchard was in lawful possession of the equipment. Blanchard further argues that Gregory Lonero is also liable for falsely characterizing the lease when he discussed it with Detective Miller.

"[A]n officer may be liable when he 'makes a false statement knowingly and intentionally, or with reckless disregard for the truth' that results in a warrant being issued without probable cause . . . ." *Michalik v. Herman*, 422

No. 10-31036

F.3d 252, 258 n.5 (5th Cir. 2005) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). "[I]f an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause." *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990). "[A]n officer who makes knowing and intentional omissions that result in a warrant being issued without probable cause" may also be liable, if, when such exculpatory omissions are included, probable cause is negated. *See Michalik*, 422 F.3d at 258 n.5 (emphasis omitted).

Here, Blanchard fails to raise a genuine dispute with regard to the veracity of the majority of the statements she identifies. First, Detective Miller's statement that the equipment was "part of the building and leased to the Lessee," and that the equipment was "owned by Mr. Lonero and [was] not to be removed . . . without expressed permission" are reasonable constructions of the lease's provisions that "restaurant equipment upon the leased premises belongs to the Lessor" and that removal of the equipment would constitute a breach of the lease. Second, Detective Miller's statement regarding the two page list is not fairly subject to the construction Blanchard advances. The item that is "part of the lease" is not the list, but the equipment referenced therein. Blanchard's construction would render nonsensical Detective Miller's statement that the item "was now missing from the interior of the business"; it was the equipment and not the list that was missing from the interior.

Consequently, the only statement contradicted by the lease is that the Lessee requires Lonero's permission to replace the equipment, as the lease provides that it is the Lessee's responsibility to make replacements. Nevertheless, even assuming Detective Miller's knowledge of this falsity may be inferred from the fact that he was provided with the lease, the affidavit, excluding that statement, would support a finding of probable cause. The

10

affidavit set forth that: (1) the lease provided that the equipment was not owned by the Lessee and that it was not to be removed from the property, (2) the former tenant at the property confirmed this interpretation and had informed Blanchard of such terms, (3) Gregory Lonero had received a call stating items were being removed from the property, (4) Gregory Lonero stated he had not given Blanchard permission to remove the equipment, (5) Eileen Lonero observed all of the equipment had been removed from the property, (6) Gregory Lonero walked Detective Miller through the property and identified what equipment was missing, (7) Blanchard's roommate, Frost, had seen Blanchard and others removing equipment from the property, (8) Blanchard told Frost that she put the removed equipment in the storage facility, and (9) the storage facility's manager confirmed that Blanchard leased various units at the location. Such facts are sufficient to establish probable cause to search the storage units.

With regard to the lease, Blanchard fails to identify evidence that Detective Miller's omission was an attempt to knowingly and intentionally exclude materially exculpatory evidence. The lease's provision that Blanchard may "use" the equipment can only be fairly read as a provision allowing Blanchard to use the equipment on the property; it did not give Blanchard permission to remove all of the property and place it in her personal storage units, even after she intended to abandon the property and end her status as lessee.[6] Even assuming the lease could be so fairly read, there is no evidence to

---

[6] Although the state criminal court quashed the Bill of Information, finding that, "the State's responses to the accused's Bill of Particulars establish[ed] that at all relevant times the kitchen equipment referred to in the outstanding Bill of Information was in the lawful possession of the accused and was not subject of a theft," it is unclear whether the state court found that the lease's "use" term provided Blanchard with legal right to remove the equipment, that its ambiguous nature negated Blanchard's *mens rea*, such that her possession was not theft, or relied on some other portion of the Bill of Information. Neither the motion to quash nor bill of information are included in the record, and so it is impossible to determine what the state criminal court's judgment was based on. Nevertheless, Blanchard identifies no authority to show that the state court's decision to quash the Bill of Information has any

show Detective Miller so read the lease, and thus knowingly and intentionally excluded that information by not attaching the lease to the warrant affidavit. Lastly, Detective Miller disclosed, in the warrant affidavit, the existence of the lease, Blanchard's status as tenant, and that the equipment was leased to her. Attaching to the affidavit the lease's term allowing her to "use" the equipment provides no additional material information bearing on probable cause.

Accordingly, Blanchard fails to identify a genuine dispute as to the sufficiency of the warrant affidavit to establish probable cause.[7]

### III.   Unlawful Arrest

Blanchard similarly asserts the arrest warrant application was misleading and contained material omissions because (1) the lease was not attached, (2) Detective Miller did not interview Blanchard to determine her intent in removing the equipment, and (3) it contained Gregory Lonero's characterization that the lease did not allow her to remove the equipment.  Consequently, Blanchard argues that there is a genuine dispute of material fact as to the lawfulness of her arrest.

Like her claim with regard to the unlawful search of the storage units, to prevail on her claim for unlawful arrest, Blanchard "must demonstrate that a genuine issue of material fact exists as to whether the Appellees knowingly provided false information to secure the arrest warrant[] or gave false information in reckless disregard for the truth." *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000).  The Court "disregard[s] any such properly contested statements in the affidavits and then determine[s] whether the warrant would establish probable cause without the allegedly false information." *Id.*   Probable cause for an arrest exists "when the totality of the facts and

bearing on the existence of probable cause at the time of the search warrant application.

[7] For this reason, the Court does not address the question of whether Lonero could be liable under § 1983 for statements he made to Detective Miller when acting as landlord.

circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. Cty. of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (citation and quotation marks omitted).  The Court examines the totality of the circumstances to decide "whether there is a 'fair probability' that a crime occurred." *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (citations omitted).  A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Id.*

With regard to the purported misstatements and omissions, as discussed above, the lease was not materially exculpatory.  Further, Lonero's purported misstatement is in fact a fair characterization of the lease terms.  Lastly, although Detective Miller could have called Blanchard to inquire as to her motive, Blanchard identifies no authority requiring an officer to make such an inquiry.  Rather, "[s]pecific intent may be inferred from the circumstances." *Thierry v. Lee*, 48 F.3d 529 (5th Cir. 1995).  The fact that Blanchard had removed all of the equipment from the property, and that the equipment had been found in Blanchard's storage units, created a sufficient inference that Blanchard removed the property with the intent to permanently deprive the Loneros of it.  *See* LA. REV. STAT. ANN. § 14:67 (providing element of theft is taking with "intent to deprive the other permanently").

Accordingly, Blanchard fails to show a genuine dispute of material fact as to the lawfulness of her arrest.

## IV.    Malicious Prosecution

Blanchard argues that a genuine dispute of material fact exists as to her malicious prosecution claim.[8]    Under Louisiana State law, a malicious

---

[8] The district court erroneously concluded that the Fourth Amendment supports a claim for malicious prosecution under § 1983 distinguishable from Blanchard's claims for unlawful search and arrest.  *See Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc)

prosecution claim requires plaintiff show, among other things, an "absence of probable cause." *See Robinson v. Goudchaux's*, 307 So. 2d 287, 289 (La. 1975). "The existence of probable cause in any case depends upon the particular facts of that case." *Culpepper v. Ballard*, 344 So. 2d 110, 112 (La. App. Ct. 1977). "Probable cause does not depend merely upon the actual facts of the case, [however,] but upon the defendant's honest belief of the facts when making charges against the plaintiff." *Alston v. Stamps*, 877 So. 2d 259, 262 (La. App. Ct. 2004).

Blanchard's sole contention is that the lease negated any probable cause to prosecute her. As discussed above, however, the lease did not eliminate the probable cause created by the facts honestly believed by Defendants. Accordingly, Blanchard fails to identify a genuine issue of material fact as to her malicious prosecution claim.

## V.    Claims Against Sheriff Normand

Lastly, Blanchard appeals the grant of summary judgment as to her claims against JPSO Sheriff Normand. Blanchard's sole argument is that the Sheriff is vicariously liable for state law claims of malicious prosecution and false arrest. Consequently, as the Court has affirmed the grant of summary judgment as to those claims, summary judgment is also appropriate as to Blanchard's claims against Sheriff Normand.

### CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

(holding "causing charges to be filed without probable cause will not without more violate the Constitution"; declining to use the term "malicious prosecution" where claim establishes a Constitutional violation such as unlawful seizure); *see also Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812-13 (5th Cir. 2010) (dismissing free-standing § 1983 malicious prosecution claim). The district court nevertheless analyzed Blanchard's claim under Louisiana State law, and we construe Blanchard's appeal as challenging the grant of summary judgment on her state law malicious prosecution claim.