**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-20398**
_____


**ALEX REYES; VIRGINIA MARTINEZ,**

**Plaintiffs-Appellees,**


**VERSUS**


**CITY OF RICHMOND, TEXAS; ET AL,**

**Defendants,**

**DAN COX, Sergeant,**

**Defendant-Appellant.**


_____

Appeal from the United States District Court
For the Southern District of Texas
_____


March 28, 2002

Before SMITH, and DeMOSS, Circuit Judges, and DUPLANTIER,[1] District Judge.

DeMOSS, Circuit Judge:

Plaintiff Alex Reyes was shot by Defendant Dan Cox of the Richmond Police Department. Reyes, who is now confined to a wheelchair, sued Cox and the City of Richmond alleging violations of Reyes' Fourth and Fourteenth Amendment rights to be free from

_____

[1] District Judge of the Eastern District of Louisiana, sitting by designation.

the use of excessive force.  *See* 42 U.S.C. § 1983.  Plaintiff Virginia Martinez, Reyes' wife, also seeks damages for loss of consortium.

Officer Cox moved for summary judgment based on qualified immunity.  The magistrate judge denied the motion, positing that "[g]iven the widely different witness accounts of the shooting of Plaintiff Reyes, the case simply cannot be resolved on summary judgment."  Officer Cox appealed the magistrate's decision to this Court, arguing: (1) that we have jurisdiction over this interlocutory appeal under the "collateral order doctrine," and (2) that, under the theory of qualified immunity, he is entitled to summary judgment as a matter of law.  Because we conclude that Officer Cox's "arguments on appeal depend upon portions of his statement of facts that differ from the facts the district court assumed," *White v. Balderama*, 161 F.3d 913, 914 (5th Cir. 1998), we dismiss Officer Cox's appeal for lack of jurisdiction and remand to the trial court for resolution of the parties' claims.

I.    BACKGROUND

A.  <u>The Uncontested Facts</u>

On November 7, 1999, Officers Stephen Polinski, Brian Culpepper, and the Defendant Officer Cox attempted to execute an arrest warrant against Plaintiff Reyes for failure to appear on a possession of controlled substance charge.  When Reyes saw the

officers approaching his apartment, he jumped out the window and fled.

The same officers returned to Reyes' apartment complex later that same day. While there, they saw Reyes climb into the passenger seat of a car. The officers returned to their respective police cars to give chase. Officer Polinski and Officer Cox followed behind Reyes' car, while Officer Culpepper took a different route.

A few blocks away, Reyes jumped out of the passenger side of the car. Officer Polinski, who was closest to Reyes, also jumped out of his car and chased the unarmed Reyes on foot between two houses. Officer Cox observed these events, and advised Officer Culpepper about the chase's status. Officers Cox and Culpepper both parked their cars on the next street over. Officer Cox claims that before he exited his patrol car, he heard someone call out for help. Then, according to his testimony, he followed the voice to a backyard catty-cornered to the yard in which Reyes and Officer Polinski were already struggling. The struggle was taking place next to a chain-link fence on the opposite side of the other backyard from Defendant Cox's position.

Officer Culpepper was across the back fence from, and on the same side of the yard as, Officers Polinski and Reyes. A civilian witness, Jimmy Williams, was in the same backyard as Officer

Culpepper.  These are the only facts upon which all the parties' versions agree.

## B.  The Disputed Facts

According to Officer Cox, when he arrived on the scene he called out to Officer Polinski, but received no answer.  Officer Cox described the scene as well lit, but he was unable to see if Reyes was armed.  Officer Cox claims that he twice called out for Reyes to stop, then fired two warning shots, and then fired a third shot into Reyes' abdomen to protect Officer Polinski.  Officer Cox also asserts that, *after* Reyes was shot, Reyes ran a few steps away from Officer Polinski and then fell.  He further testified that, had Reyes already broken free of Officer Polinski's grip and begun to flee the scene, shooting him would be an unreasonable act.

According to Officer Polinski, he caught Reyes by his shirt and the two struggled when Reyes tried to escape.  After falling to the ground, Officer Polinski laid on his right side to prevent Reyes from gaining access to his firearm.  He held Reyes by his legs as Reyes continued to hit, kick, and bite Polinski.  Officer Polinski claims he only heard two shots, and that, after the second one was fired, Reyes jumped from his grip, stumbled a few steps, and then fell to the ground.  Officer Polinski described the backyard as dimly lit.

According to Officer Culpepper, he yelled at Reyes to get off of Officer Polinski.  He testified that Officer Polinski was the

4

only officer in serious danger from Reyes. He also testified that he only heard two gunshots, and that Reyes had stepped off Officer Polinski and run about five steps before he was shot. His testimony reflected his view that the threat to Officer Polinski was over as soon as Reyes escaped his grip and attempted to flee. In Officer Culpepper's opinion, the backyard was not well lit.

According to Reyes, when Polinski caught up with him, he fought in order to escape. When he escaped Polinski's grip, he ran. After taking about five steps, he felt the bullet hit him. Although his appellate brief concedes that there were three shots fired, he testified that he did not hear warning shots. Reyes also maintains that the officers did not verbally warn him before the shooting.

Finally, according to the witness Williams, his neighbors' dog was biting Officer Polinski during his scuffle with Reyes. Williams also reported hearing three shots, but testified that the third was fired *after* Reyes had broken free from Polinski's grip and had run at least ten feet.

The parties further dispute the evidentiary effect of Reyes' gunshot wound. Officer Cox claims the point of entry indicates that Reyes was not running away; Reyes argues that the wound is consistent with his fleeing from the scene.

## C. **The Magistrate Order**

The parties agreed to have their claims heard by a magistrate judge pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. PROC. 73. In denying Officer Cox's motion for summary judgment, the Magistrate explained:

> [T]he accounts of the five witnesses lend themselves to at least two significantly different fact scenarios, either of which is supported by sufficient evidence to convince a reasonable jury of that version's veracity. . . .
>
> According to one possible reading of the testimony, Plaintiff Reyes was posing a great threat of injury to Officer Polinski by resisting arrest. The poor lighting in the backyard where they fought made it difficult to tell whether Plaintiff Reyes had access to Officer Polinski's gun or to tell how severely Officer Polinski was injured. Although Plaintiff Reyes' outstanding warrant was for a nonviolent offense, his actions against Officer Polinski were violent and posed an immediate danger to Officer Polinski's safety. Defendant Cox could not run the risk of delaying the capture of Plaintiff Reyes by first employing nondeadly means, in part, because Plaintiff Reyes refused to yield in this attack despite the officers' warnings. Defendant Cox shot and hit Plaintiff Reyes while Plaintiff Reyes was in the midst of assaulting Officer Polinski.
>
> According to another possible version, perhaps the closest to an opposite account, an unarmed Plaintiff Reyes was struggling to escape from Officer Polinski's grasp in a well-lighted backyard. Officer Polinski's strong hold on Plaintiff Reyes' leg caused Plaintiff Reyes to kick and stomp Officer Polinski in his effort to break free. The homeowners' dog joined the scuffle, possibly biting Officer Polinski as he was lying on the ground. Finally, Plaintiff Reyes managed to get away from Officer Polinski and to run ten feet before he was hit by the bullet and paralyzed.

6

As a matter of law, the Magistrate concluded, these different versions implied different verdicts, and thus summary judgment was inappropriate.

## II. JURISDICTION

This Court has jurisdiction over "all final decisions of the district courts," except those immediately appealable to the Supreme Court. 28 U.S.C. § 1291. The denial of a summary judgment is generally not a final, appealable order. However, "[u]nder the collateral order doctrine, a small class of interlocutory orders that (1) conclusively determine, (2) important issues, which are separate from the merits of the action, and (3) which would be effectively unreviewable on appeal from a final judgment, are deemed 'final' for purposes of appeal." *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996).

To determine whether a denial of summary judgment based on qualified immunity is immediately appealable, this Court looks at the legal argument advanced. When a district court denies summary judgment on the basis that genuine issues of material fact exist, it has made two distinct legal conclusions: that there are "genuine" issues of fact in dispute, and that these issues are "material." This Court may not review a conclusion that issues of fact are genuine, *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), but we can review a district court's conclusion that an issue of

7

law is material.  ***Bazan v. Hidalgo County***, 246 F.3d 481, 490 (5th Cir. 2001).  An officer challenges materiality when he contends that "taking *all* the plaintiff's factual allegations as true no violation of a clearly established right was shown."  ***Cantu***, 77 F.3d at 803.

Arguing that materiality is the only thing at issue here, Officer Cox urges this Court to exercise jurisdiction over this case.  His brief states: "The facts are undisputed.  Importantly, even when all objective facts are viewed in a light most favorable to the Plaintiffs, qualified immunity is clearly not overcome.  The court thus has jurisdiction. . . ."

The problem with Officer Cox's argument is that, despite giving lip service to the correct legal standard, his argument does not take the facts in a light most favorable to the Plaintiffs.  In fact, significant portions of his argument assume facts different from those assumed by the Magistrate.  For example, his brief states that two police officers "were yelling for Reyes to stop."  Yet, the Magistrate specifically listed the presence of "the officers' warnings" as a genuine disputed issue of fact, and Reyes has consistently argued that he was *not* warned.  More significantly, Cox's argument assumes Reyes was either assaulting Polinski when he was shot, or possibly, moving towards another

8

officer.[2]  However, the Magistrate identifies "the most significant" issue of fact as "whether Plaintiff Reyes was assaulting Officer Polinski when Defendant Cox shot Plaintiff Reyes or whether Plaintiff Reyes was simply fleeing capture and posing no further serious threat."

In essence, Cox's appeal amounts to a challenge to the sufficiency of the evidence cited by the Magistrate.  However, this Court has made clear that, "to the extent that [an officer's] arguments on appeal depend upon portions of his statement of facts that differ from the facts the district court assumed, we would lack jurisdiction to consider them because they would involve challenges to the sufficiency of the evidence."  ***White v. Balderama***, 161 F.3d 913, 914 (5th Cir. 1998); *see also* ***Cantu***, 77 F.3d at 802 ("Orders that resolve a fact-related dispute of 'evidence sufficiency', i.e. which facts a party may, or may not, be able to prove at trial . . . are not immediately appealable and must await final judgment.").

_____

[2] Cox's brief states that "Cox' third shot hit Reyes, not in the back, but just below his nipple, which demonstrates that Reyes was not, as he alleges, running from Cox when he was shot."  He also states, "Reyes claims that he . . . decided to flee again just as he was shot."  Only once, in his reply brief, does Cox arguably acknowledge the Plaintiffs' assertion that Reyes was fleeing when shot: "From an objective standpoint, that Reyes may have taken a few steps from Polinski does not mean he was no longer a threat to the public or other officers."  However, this statement is merely an attack on the  Magistrate's conclusion that sufficient evidence exists for a fact finder to conclude that Reyes was fleeing and no longer posed a threat when he was shot.  This is not an argument we can review here.  ***Johnson v. Jones***, 515 U.S. 304, 312 (1995).

9

**III. CONCLUSION**

We find no error in the Magistrate's decision that the fact issues in this case preclude summary judgment. Cox's arguments here challenge the genuineness, rather than the materiality, of the factual disputes in this case, which is not reviewable by interlocutory appeal. Accordingly, we dismiss for lack of jurisdiction and remand to the district court.