# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-61100
Summary Calendar

DONNA SMITH

Plaintiff - Appellee

v.

O J PACKNETT, Individually; REGINALD JACKSON, Individually

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:07-CV-175

Before JOLLY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Donna Smith filed this 42 U.S.C. § 1983 action against O.J. Packnett and
Reginald Jackson, individually and in their official capacities as Deputy Sheriff
and Sheriff, respectively, of Wilkinson, County, Mississippi, alleging that
Packnett arrested her without probable cause, that Packnett used excessive force
to effectuate arrest, and that Jackson failed to adequately train or supervise
Packnett. The district court denied Packnett's and Jackson's motions for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

summary judgment based on qualified immunity, and Packnett and Jackson filed a timely interlocutory appeal. For reasons we explain, however, we lack jurisdiction to review the district court's denials. Accordingly, we dismiss the appeal.

I.

The underlying facts of this appeal are as follows.

On August 9, 2007, members of the Wilkinson County Democratic Executive Committee convened at the county courthouse to count absentee ballots purportedly cast in a primary election held two days prior. Smith's husband, Kirk Smith, was a candidate for supervisor in that election, and Smith was present to observe committee members count the absentee ballots. During a pause in the count, Smith asked for permission to speak. When committee members failed to recognize her, she proceeded to express her concerns with the count and the election process.

By all accounts, Smith's speech caused some disturbance in the courthouse. By Smith's account, at that point Packnett grabbed her forcefully and instructed her to stop speaking. By Packnett's account, Packnett first warned Smith that if she did not stop speaking, he would have to arrest her; when she did not, he effectuated a formal arrest.

Smith alleges that even though she did not resist arrest, Packnett forcefully grabbed her, spun her around, tightly handcuffed her, and twisted her arms behind her back; in the process she alleges he slammed her into a row of chairs and into door jambs. She claims that she suffered injury to her right shoulder and neck.

Although Jackson was not present at the scene, Smith seeks to hold him liable for Packnett's alleged abuses on the basis that Jackson, Packnett's supervisor, failed to adequately train Packnett on the use of force. In support of that claim, Smith pointed to a recent opinion in a case involving Packnett and

2

Jackson in which it was alleged that Packnett used excessive force in four prior arrests. *See Ellis v. Packnett*, No. 5:06-CV-33, 2007 WL 2688540, at *10 (S.D. Miss. Sept. 10, 2007).

Asserting qualified immunity, Packnett and Jackson moved for summary judgment on all claims against them in their individual capacities. The district court denied those motions on the basis that there exist genuine issues of material fact as to whether Packnett unlawfully arrested Smith, whether Packnett used excessive force to effectuate arrest, and whether Jackson failed to train or supervise Packnett. Packnett and Jackson appeal.

## II.

"Before reaching the merits of this case, we must first satisfy ourselves that the appeal is properly before us." *Goodman v. Harris Co.*, 443 F.3d 464, 467 (5th Cir. 2006) (quoting *Steadman v. Texas Rangers*, 179 F.3d 360, 365 (5th Cir.1999)). This court's jurisdiction is generally limited to the review of a district court's final orders, qualified interlocutory orders, and collateral orders. 28 U.S.C. §§ 1291, 1292; *Goodman*, 443 F.3d at 467. The denial of a motion for summary judgment typically is not a final, appealable order. A denial of a motion for summary judgment based on qualified immunity, however, is immediately appealable under the collateral order doctrine when it is based on a conclusion of law. *Mitchell v. Forsyth*, 427 U.S. 511, 530 (1985); *Thibodeaux v. Harris Co.*, 215 F.3d 540, 541 (5th Cir. 2000). A denial based on the presence of a factual dispute, on the other hand, is not immediately appealable. *Johnson v. Jones*, 515 U.S. 304, 307 (1995); *Thibodeaux*, 215 F.3d at 541.

Thus, to determine whether a denial of summary judgment based on qualified immunity is immediately appealable, we necessarily look at the basis of the district court's denial. "When a district court denies summary judgment on the basis that genuine issues of material fact exist, it has made two distinct legal conclusions: that there are 'genuine' issues of fact in dispute, and that these

issues are 'material.'" *Reyes v. City of Richmond, Tex.*, 287 F.3d 346, 350-51 (5th Cir. 2002). We can review a legal conclusion that issues are material, *id.* (citing *Bazan v. Hidalgo Co.*, 246 F.3d 481, 490 (5th Cir. 2001)), but we may not review a conclusion that issues of fact are genuine, *id.* at 351 (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). That is, we may not review a district court's decision denying summary judgment on the basis that there remains a significant factual dispute because we would, perforce, be required to decide an issue of fact.

Thus, to satisfy ourselves that this appeal is properly before us, for each of Smith's claims we must look at the basis for the district court's denial of summary judgment based on qualified immunity. As we explain below, because for each claim the district court found a significant factual dispute, we lack jurisdiction to review its denials.

## III.

We begin with Smith's unlawful arrest and excessive force claims against Packnett.

## A.

Smith alleges that Packnett violated her constitutional right to be free of unlawful arrest because he arrested her without probable cause. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) (quoting *United States v. McCowan*, 469 F.3d 386, 290 (5th Cir. 2006)).

Packnett claims he had probable cause to arrest Smith under MISS. CODE ANN. § 97-35-7(1), which provides for the arrest of persons who provoke a breach of the peace. That statute states:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which

may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person . . . shall be guilty of disorderly conduct.

First, there is the factual question whether Smith's speech indeed provoked a breach of the peace that would warrant police response against her in the first place. Second, the cited statute authorized Packnett to arrest Smith only after she failed or refused to comply with an order to cease her offending conduct. Smith claims, however, that Packnett arrested her at the precise moment he grabbed her arm and simultaneously instructed her to "sit down and shut up or I'll have to arrest you." Packnett does not deny that he initially grabbed Smith's arm, but instead argues that whether he did is immaterial because that act could not constitute an arrest. Packnett claims he "finally placed Smith under arrest" only after she refused to comply with his request that she desist.

Contrary to Packnett's assertion, whether he grabbed Smith's arm at the same time he instructed her to desist is material to whether Packnett arrested Smith without probable cause. Packnett's act of grabbing Smith's arm arguably could constitute an arrest, depending on how other facts relating to the disturbance develop. Although at that moment Smith may not have been formally under arrest, a jury could find that Smith "would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc)); *see also Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007).

The district court denied summary judgment on the basis that "[t]he facts relating to the initial contact between Smith and Packnett remain in dispute."

We agree and accordingly we lack jurisdiction to review its denial of qualified immunity as to Smith's unlawful arrest claim.

B.

Smith also alleges that Packnett used excessive force to effectuate arrest. An excessive force claim requires a plaintiff to show she suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

Smith claims that although she put up no resistance, Packnett forcefully grabbed her, spun her around, tightly handcuffed her, and twisted her arms behind her back, and that in the process he slammed her into a row of chairs and into door jambs. She claims that she suffered injury to her right shoulder and neck.

Packnett argues that any injury Smith suffered is due solely to her "active and fierce resistance" to his attempts to handcuff her. In support, he points to video evidence that he claims disproves Smith's allegations. The video evidence, however, is little more than three short and unclear video images recorded by a cell phone. In the first clip, Smith appears to be addressing the committee; in the next clip, Packnett is handcuffing Smith; the final clip captures Packnett escorting Smith from the courtroom. The video does not capture Packnett's initial contact with Smith, and the contact it does capture is not fluid. There is no video evidence of what transpired in the time before and between the clips.

Packnett also points to a portion of Smith's own deposition testimony that he argues rebuts her allegations. Smith stated:

> [W]hen he tried to spin me around, I was standing right next to the chairs, and, you know, the chairs are bolted to the floor. And there's kind of like a bar that the chairs are bolted to. And when he spun me around, I hit – my ankle hit the bar at the bottom. My knee hit

6

the – the arm. And when that – when he kind of spun me around when I hit that, that's when I kind of fell on top of the chairs. And I guess, since he was holding onto the handcuffs, it pulled him kind of half on top of me, not – you know, he didn't totally land totally on top of me. It was kind of like I pulled him on top of me.

The district court concluded that, notwithstanding Packnett's evidence, in the light of Smith's allegations "there exists a genuine issue of material fact as to whether a reasonable officer would have known that such actions constitute excessive force." The district court thus denied summary judgment based on qualified immunity as to Smith's excessive force claim because it found a significant fact-related dispute. We therefore do not have jurisdiction to review that denial.

## IV.

Finally, we review the district court's denial of qualified immunity to Sheriff Jackson, in his individual capacity, for his alleged failure to train Packnett.[1]

---

[1] We note only in passing that the failure to train an employee is not itself a violation of the Constitution; it is instead a basis for holding an employer liable when an employee violates the Constitution. Our cases have held that the supervisor may be personally liable for the individual acts of an employee, but "only at the point when the [plaintiff] shows that the official, by action or inaction, demonstrates a deliberate indifference to [the victim's] constitutional rights." *Doe v. Taylor Independent School District.*, 15 F.3d 443, 454 (5th Cir. 1994). In this case, for instance, it is not alleged that Jackson himself violated the Constitution, but instead that he was deliberately indifferent to constitutional violations.

This distinction reveals the uncomfortable fit between qualified immunity and failure to train claims. The standard test for qualified immunity requires, first, the allegation of a violation of an established constitutional right and, second, a showing that, notwithstanding that violation, the officer's actions were objectively reasonable under then-clearly established law. *Thomson v. Upshur Co.*, 245 F.3d 447, 456 (5th Cir. 2001). Because the failure to train is not itself a violation of the Constitution, the first prong of the standard qualified immunity analysis technically cannot be addressed. Furthermore, the second prong seems inapplicable because an officer, having acted with deliberate indifference, can hardly be said to have acted with objective reasonableness. Nevertheless, our cases have assumed, without addressing the incongruence, that qualified immunity mechanically applies to failure to train claims. *See, e.g., Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005). We do not resolve the incompatibilities here because, as we explain in the text, we are without appellate

Jackson was not present when Smith was arrested and Smith has not alleged Jackson's personal involvement. Smith alleges instead that Jackson is personally and individually liable for having failed to train or supervise Packnett regarding the use of force and proper arrest procedures, and that those failures caused Packnett to violate Smith's constitutional rights. To establish individual liability of a supervisor for failure to train, a plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005).

Smith offered evidence of five prior incidents involving Packnett that are similar to the incident that is the subject of this case. Those prior incidents are documented in a recent opinion in a case involving Packnett and Jackson in which it was alleged that Packnett used excessive force to arrest a mother in the presence of her three children during a traffic stop. *See Ellis v. Packnett*, No. 5:06-CV-33, 2007 WL 2688540, at *10 (S.D. Miss. Sept. 10, 2007). On Jackson's motion for summary judgment in that case on the issue of his failure to train Packnett, the district court observed:

> The plaintiffs have submitted evidence of prior incidents involving
> Deputy Packnett which are similar, in varying degrees, to the

jurisdiction in this interlocutory appeal to review the denial of qualified immunity.

Before we leave the subject, however, we will also note the coincidence that the elements necessary to establishing Sheriff Jackson's personal liability for the failure to train are identical to the elements required to establish his official liability. We need not address the important question implied by this coincidence – whether a municipality's liability is also determined whenever a supervisor, who is also a policymaker, is personally liable for the failure to train – but a later panel may be required to do so.

incident complained of in this case. Deposition of Amy Rene Bell Greer; Deposition of John Roland White; Deposition of Jewell Jack Darden; Deposition of Emily Holliday Lewis. It is also alleged that Sheriff Jackson was directly notified of three of these incidents. Greer Depo.; White Depo.; Lewis Depo.

Jackson concedes that there have been "some incidents" in which Packnett has been accused of handcuffing arrestees too tightly, citing *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (citations omitted) ("handcuffing too tightly, without more, does not amount to excessive force"). Jackson denies, however, that those incidents were sufficient to alert him to any inadequacy in Packnett's training. According to Jackson, his department "constantly" trains on the use of excessive force. Jackson claims that Packnett has participated specifically in the department's domestic violence and homeland security training sessions, both of which he claims included instruction on the use of force. He also points to Packnett's initial training at the Mississippi Law Enforcement Training Academy, and to testimony in which Packnett stated that Jackson hosts training sessions on arrest techniques, the use of force, and other matters every other month.

The district court concluded that, notwithstanding Jackson's evidence, "Smith's evidence is sufficient to create a genuine issue of material fact as to whether Packnett was properly trained/properly supervised and, further, whether Jackson acted with deliberate indifference as to Packnett's training and/or supervision," and denied qualified immunity on that basis. We agree, and therefore we do not have jurisdiction to review the denial of immunity to Jackson.

V.

For the reasons we have explained, we do not have jurisdiction to review the district court's denials of Packnett's and Jackson's motions for summary judgment based on qualified immunity. Accordingly, their appeal is

9

DISMISSED FOR LACK OF JURISDICTION.