# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2013

No. 11-20628

Lyle W. Cayce
Clerk

MARY WALKER, Individually and as a Personal Representative of the
Estate of Michael Dewayne Walker; MICHAEL SPENCER, Individually and
as a Personal Representative of the Estate of Michael Dewayne Walker,

Plaintiffs–Appellees,

v.

MICHAEL UPSHAW, Warden of Ferguson Unit,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-530

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

This case is before the court on interlocutory appeal from the district
court's denial of summary judgment based on qualified immunity. The district
court denied Warden Michael Upshaw's motion for summary judgment because
it concluded there were facts to support that Upshaw, through his failure to
train and supervise his staff, was deliberately indifferent to inmate Michael

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-20628

Dewayne Walker's right to be free from cruel and unusual punishment. We reverse.

## I

Plaintiffs–Appellees Mary Walker and Michael Spencer (Plaintiffs) filed suit under 42 U.S.C. § 1983 individually and as personal representatives of the estate of their son, Michael Dewayne Walker (Walker), for Walker's alleged wrongful death while in custody of the Texas Department of Criminal Justice (TDCJ). Walker was serving a twenty-year prison sentence after being convicted for aggravated sexual assault of a child and was assigned to the TDCJ's Ferguson Unit in Midway, Texas. Walker was placed in a cell with Wilber "Peanut" Hamilton (Hamilton). In the early morning hours the following day, Walker was pronounced dead after having been stomped and kicked to death by Hamilton.

Plaintiffs sued the TDCJ, supervisory officials, and correctional officers alleging that their failure to protect Walker resulted in his wrongful death. Initially, Plaintiffs advanced multiple theories of recovery including violations of Walker's rights under the First, Fourth, Eighth, and Fourteenth Amendments. After multiple pretrial motions, the only remaining claims are against three correctional officers on duty the night Walker died and Appellant Michael Upshaw (Upshaw) for their alleged violation of Walker's Eighth Amendment right to be free from cruel and unusual punishment. Upshaw was the warden at the Ferguson Unit when Walker was killed. Plaintiffs contend that Walker's death was caused by, among other things, Upshaw's failure to train and supervise the correctional officers and his failure to enforce or adopt adequate policies to ensure Walker's safety.

Upshaw and other defendants filed a motion for summary judgment based on qualified immunity. The district court denied the motion. It held that "significant factual issues prevent a determination that the supervisors' conduct

2

No. 11-20628

was objectively reasonable in light of clearly established law" and determined that Plaintiffs were entitled to more discovery on the issue. The district court also held that "because genuine issues of material fact remain concerning the deficient policies implemented and enforced at the Ferguson Unit . . . , the supervisory officials are not entitled to qualified immunity."

Upshaw, along with the other defendants, filed an interlocutory appeal of the denial. This court dismissed a portion of Plaintiffs' complaint against several parties and remanded so that Upshaw and two correctional officers who were on duty at the time of Walker's death could "be deposed to determine whether they had an actual subjective awareness of the danger to Walker and if so, whether they were deliberately indifferent to that danger of which they were actually subjectively aware."

After Upshaw was deposed, he filed a second motion for summary judgment based on qualified immunity. Again, the district court denied his motion. The district court held that it was "unclear whether [Upshaw] failed to adequately train the prison staff under his supervision" and noted that "plaintiffs have offered expert testimony that Upshaw failed to adequately train and supervise his staff." Though claims remain pending against the correctional officers, only Upshaw is a party to this appeal.

## II

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable notwithstanding that such denial was premised upon the existence of '[m]aterial issues of fact.'"[1] "We determine whether a denial of summary judgment based on qualified immunity is

---

[1] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 455 (5th Cir. 2001) (alteration in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

immediately appealable by 'look[ing] at the legal argument advanced.'"[2] "Facts are material if they might affect the outcome of the lawsuit under the governing law."[3] A party "challenges materiality when he contends that taking all the plaintiff's factual allegations as true no violation of a clearly established right was shown."[4] "Because this court has jurisdiction only to review the questions of law posed by the district court's denial of summary judgment based on the defense of qualified immunity, this court will ignore the disputes of fact, take those facts assumed by the district court in a light most favorable to [plaintiffs], and determine whether those facts establish an exception to the qualified immunity defense."[5]

The district court offered no assumed facts to support its conclusion that fact issues remained concerning whether Upshaw failed to train and supervise his staff adequately other than stating, "Plaintiffs have offered expert testimony that Upshaw failed to adequately train and supervise his staff." "Standing alone, an expert's opinion is generally not enough to establish deliberate indifference."[6] "Ideally, the district court's order denying summary judgment based on qualified immunity explains what facts the plaintiff may be able to prove at trial, i.e. what particular facts the court assumed in denying summary

---

[2] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005) (alteration in original) (quoting *Reyes v. City of Richmond*, 287 F.3d 346, 350 (5th Cir. 2002)).

[3] *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Estate of Davis*, 406 F.3d at 379 (quoting *Reyes*, 287 F.3d at 351) (internal quotation marks omitted).

[5] *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 552 (5th Cir. 1997) (quoting *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996)) (internal quotation marks omitted).

[6] *Thompson*, 245 F.3d at 459.

judgment urged on the basis of qualified immunity."[7]  When the district court does not do so, we have two choices: "scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order."[8]  We do not believe remand is necessary here.  Even accepting all of Plaintiffs' evidence as true and considering it as a whole, the facts do not support a finding of Upshaw's deliberate indifference.

The evidence, taken in the light most favorable to Plaintiffs, reflects that Hamilton had a history of violence, attempted to kill another cellmate the same way he used his prison-issued boots to kill Walker, and was in administrative segregation for over six years.  Hamilton's fear of other inmates was documented in his files.  Plaintiffs also offered evidence that other inmates and prison administrators knew of and reported Hamilton's history of assaulting cellmates.  One inmate testified that it would take no more than thirty or forty minutes for a fight to break out after Hamilton received a cellmate.  After such a fight, the prison staff would segregate Hamilton for fifteen days, return him to a cell with another cellmate, and the process would repeat again.  Conversely, these same inmates reported Walker as being "laid back" and "stay[ing] to himself."  Evidence further suggests that Walker would have been classified as "vulnerable" under the Safe Prisons Program.  Finally, inmates testified that there were several empty cells on the 3 Row of B Block, meaning it was unnecessary to put Hamilton and Walker in the same cell.

As for the night of the attack, Plaintiffs offered evidence that Hamilton warned the staff that "violence is going to happen" and that Hamilton told officers, "If you put him in here, I'm going to kill him."  There is also evidence

---

[7] *Id.* at 456.

[8] *Id.* (citing *Behrens*, 516 U.S. at 842).

that Walker was crying for help for at least three hours and that no guards checked on him during this time. After the attack, an inmate testified that one of Upshaw's subordinates encouraged inmates to change their reports of the incident to state that a guard or rover completed his round every fifteen minutes that night to "make it look good for her behalf and her officers."

As for prison conditions, the row on which Hamilton and Walker were housed had no air conditioning and was farthest from the fans, making it the hottest area of the unit in July. Upshaw testified that he was unaware of a policy requiring inmates such as Hamilton, who may have been taking psychotropic medication, to be housed in areas that would not be as hot as the 3 Row of B Block. Further, a guard testified that Ferguson was known as a "gladiator" prison for being a "rough unit."

All parties agree that Upshaw had no actual, subjective knowledge of Walker's situation on the night of his death. In fact, the undisputed evidence reveals that Upshaw was at home in bed the night of Walker's death. With respect to policies, Upshaw testified that as senior warden of the Ferguson Unit, he was responsible for the "overall operation of the facility, all aspects of it." When asked about the boots Hamilton wore, Upshaw explained that while soft, canvas shoes—as opposed to the work boots Hamilton had—are available, they are usually only an option for inmates in administrative segregation. Upshaw also stated, "I've had a lot of inmate assaults where shoes or boots, even tennis shoes, were used; but none . . . that resulted in the death of an offender."

Plaintiffs submitted an expert report by Charles Montgomery, which concluded that Upshaw, as the primary policymaker overseeing the Ferguson Unit, "failed to ensure that the necessary steps were taken insofar as the supervision, training, and/or discipline of guards" and that "Upshaw's deposition testimony regarding [his handling of threats against cell mates was] utterly preposterous." Plaintiffs rely on this expert report to contend that Upshaw's

No. 11-20628

policy of handling an inmate's threat against another inmate was to take investigative and corrective measures for a specific threat but not if the threat was more general.

## III

The doctrine of qualified immunity grants "government officials performing discretionary functions" a shield from liability for civil damages as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[9] "The first step in the qualified immunity analysis is to determine whether the plaintiff has alleged the violation of a clearly established federal constitutional . . . right."[10] An official need not demonstrate that he did not violate clearly established federal rights; this burden is placed upon the plaintiffs.[11] Once the plaintiff has discharged that burden, "the Court must then assess whether the defendant's conduct was objectively reasonable in light of clearly established law."[12]

It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."[13] "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the

---

[9] *Estate of Davis*, 406 F.3d at 380 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted).

[10] *Thompson*, 245 F.3d at 457 (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998)).

[11] *Estate of Davis*, 406 F.3d at 380 (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)).

[12] *Thompson*, 245 F.3d at 457 (citing *Hare*, 135 F.3d at 326).

[13] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (alteration in original) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) (internal quotation marks omitted).

victim's safety."[14] A prison official violates the Eighth Amendment only when the inmate shows that (1) he was incarcerated under conditions the official knew posed "a substantial risk of serious harm" and (2) the prison official was deliberately indifferent to such risk.[15] An official acts with deliberate indifference if he is "aware of an 'excessive risk to inmate . . . safety' and disregards that risk."[16]

Supervisory officials may not be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability.[17] When, as here, plaintiffs allege that a supervisory official failed to train or supervise, they must prove that (1) the official failed to train or supervise the correctional officers, (2) a causal link exists between the failure to train or supervise and the alleged violation of the inmate's rights, and (3) the failure to train or supervise amounted to deliberate indifference.[18] To hold Upshaw liable on account of inadequate policy, Plaintiffs must show "(1) that the policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences."[19]

---

[14] *Id.* at 834.

[15] *Id.*

[16] *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

[17] *Thompson*, 245 F.3d at 459 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).

[18] *Id.* (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).

[19] *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 423 (1997)) (internal quotation marks omitted). Although *Johnson* speaks to municipal liability, this court has noted "the close relationship between the elements of municipal liability and an individual supervisor's liability" and held that "the same standards of fault and causation should govern." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Doe v.*

No. 11-20628

Whether the evidence sufficiently "demonstrate[s] deliberate indifference for supervisory liability is a legal issue that this court may review on interlocutory appeal."[20] We review de novo "the scope of clearly established law and the objective reasonableness of those acts of the defendant that the district court found the plaintiff could prove at trial."[21] In other words, "review of the district court's conclusions concerning the legal consequences—the materiality—of the facts" is de novo.[22]

## IV

The parties agree that Upshaw had no actual knowledge of Hamilton's prior attack of an inmate with his boots in a different unit years prior to Walker's death and that Upshaw was not at the prison the night Walker died. Because Upshaw had no actual knowledge of the danger posed to Walker, any attempt to hold Upshaw liable for a personal failure to protect Walker would fail.[23] Instead, plaintiffs claim that Upshaw is liable for his failure to train and supervise subordinates and his failure to implement adequate policies.

## A

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

---

*Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)) (internal quotation marks omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("The standard applicable to failure to train allegations against supervisors is based on that for municipal liability.").

[20] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005) (citing *Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000)).

[21] *Thompson*, 245 F.3d at 456 (citing *Johnson v. Jones*, 515 U.S. 304, 312 (1995)).

[22] *Estate of Davis*, 406 F.3d at 379-80 (citing *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)) (internal quotation marks omitted).

[23] *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

action."[24] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[25] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[26] "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation."[27]

"[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[28] "[A] showing of deliberate indifference requires that the Plaintiffs 'show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights.'"[29] It is well accepted that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[30] "Without notice that a course of training is deficient in a particular

---

[24] *Estate of Davis*, 406 F.3d at 381 (alteration in original) (quoting *Bryan Cnty.*, 520 U.S. at 410) (internal quotation marks omitted).

[25] *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

[26] *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)).

[27] *Id.*

[28] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion)).

[29] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (quoting *Snyder*, 142 F.3d at 799).

[30] *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[31]

Although supervisor liability stems from a supervisor's deliberate indifference to the violations his training causes,[32] Plaintiffs do not seem to base their claim against Upshaw on the actions or inactions of Upshaw's employees due to his training. Plaintiffs make no attempt to show a pattern of Upshaw's employees failing to protect inmates. In fact, they acknowledge that "normally, the rover on night patrol would come by every 15 to 20 minutes." This suggests that Upshaw's training was usually effective but that his subordinates' failure to make timely rounds the night Walker died played a significant role in Walker's death. Plaintiffs instead focus on Hamilton's violence and the fact that Upshaw, through his training and supervision of his employees, failed to prevent it. However, "mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability."[33]

The Supreme Court has acknowledged that "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference."[34] In so acknowledging, the Court discussed the hypothetical posed in *City of Canton v. Harris*[35] in which a city would arm its police force with firearms and employ the officers to capture fleeing felons without training the officers "in the constitutional limitation on the use of deadly

---

[31] *Id.*

[32] *See Thompson*, 245 F.3d at 459.

[33] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Snyder*, 142 F.3d at 798).

[34] *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 409) (internal quotation marks omitted).

[35] 489 U.S. 378 (1989).

force."[36]  In such an instance, "[g]iven the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, . . . the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."[37]

However, the Court stressed that the possibility of "single-incident liability" based on a failure to train is "rare,"[38] and this circuit has similarly "stressed that a single incident is usually insufficient to demonstrate deliberate indifference."[39]  Plaintiffs' claims fall far short of the hypothetical offered in *Canton* in which the officers were offered *no* training in a highly dangerous situation.  The evidence does not meet the requirements for single-incident liability.

**B**

Similarly, demonstrating that a policy reflects deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations."[40]  Plaintiffs do not identify policies that Upshaw created or failed to enforce.  Instead, they rely on Upshaw's statement that he oversaw the Ferguson Unit to assert that Upshaw was deliberately indifferent in failing to enforce or create an adequate policy that would have prevented Hamilton from having

---

[36] *Connick*, 131 S. Ct. at 1361 (citing *Canton*, 489 U.S. at 390 n.10).

[37] *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409) (internal quotation marks omitted).

[38] *Id.* at 1361.

[39] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

[40] *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)) (internal quotation marks omitted).

work boots, a cellmate, and being in a hot, uncomfortable cell that would promote violence given his mental history.

Upshaw admitted to knowing that inmates have used their shoes to hurt other inmates, but he had no actual knowledge of Hamilton's prior transgressions. This, however, focuses on actions of inmates and fails to identify any prior constitutional violations resulting from Upshaw's policies. Again, this falls short of the standard required to show that Upshaw maintained a policy with deliberate indifference to its known or obvious consequences.[41]

\* \* \*

For the foregoing reasons, we REVERSE the district court's judgment and RENDER judgment in favor of Upshaw.

---

[41] *See id.* at 310.